# Nelson v. Gregory et al. (two cases).

(Decided Feb. 18, 1936.)

C. R. LUKER for appellant.

WILLIAM LEWIS & SON for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

These two appeals have been consolidated and will be disposed of in one opinion.

The original action was brought in the Laurel circuit court by Nannie Gregory and John Gregory against James Nelson to quiet the title to a small tract of land, less than an acre, and, from the judgment adjudging Nannie Gregory to be the owner of the land in dispute, the defendant has appealed. The judgment was entered at the October, 1934, term of the Laurel circuit court. After the expiration of that term of court, James Nelson, the defendant in the first action, instituted an action under section 518 of the Civil Code of Practice against Nannie Gregory and John Gregory to have the judgment vacated and set aside and a new trial granted on the ground of newly discovered evidence. A demurrer to the petition was sustained, and, from the judgment dismissing the petition, James Nelson has appealed.

In the petition in the original action, it was alleged

that Nannie Gregory was the owner and in the actual possession of a tract of land containing 35 acres, more or less, which was described by metes and bounds, and that the defendant was claiming as his own a small portion of this tract, and that such claim was casting a cloud upon the plaintiffs' title. The defendant, in his answer, denied that the strip of land in question was owned by the plaintiff, Nannie Gregory, and asserted title in himself by adverse possession. His answer also contained a plea of champerty.

It appears from the proof that the tract of land described in plaintiffs' petition was conveyed by James M. Anders to Milton Huff on November 4, 1908, and by Huff to William W. Wells on November 29, 1917. Wells died intestate in February, 1924, leaving surviving him his widow and seven children, including the plaintiff Nannie Gregory, who later acquired by purchase the interests of all of her brothers and sisters in the 35-acre tract of land. The deed conveying their interests to her was executed in February, 1930. The land adjoining this 35-acre tract on the east was acquired by W. H. Nelson, father of appellant, in 1894. In 1897, he and James Anders, who then owned the 35-acre tract, built a division fence on what they believed to be the line. The fence, though repaired and rebuilt from time to time, remained as located by Anders and Nelson until after the death of William W. Wells in 1924, and during all of this time the respective owners used and claimed as their own the land to the fence. The appellant, James Nelson, bought 10 acres of the W. H. Nelson land, and it is the line between this 10-acre tract and the land of Nannie Gregory that is in dispute.

Appellees claim that James Nelson built a new line fence in 1924, between his land and the Wells land, and located it several feet west of the old fence so as to include slightly more than one-half acre of the Wells land. Appellant claims that he built the new fence at or near the place where the old fence had been located. The evidence is conflicting, but the weight of the evidence supports appellees' claim that the fence erected by Nelson in 1924 is several feet west of the line established by Anders and W. H. Nelson in 1897, and recognized as the correct division line by the subsequent owners of the two tracts of land. By agree-

ment between the widow of William W. Wells and appellant, the new division fence was built by Nelson in 1924. The widow furnished the wire, and Nelson furnished the labor. The widow, however, had gone to Louisville to reside, and was not present when the fence was built. Both of the appellees testified that the new fence was located several feet west of the old fence, and John Jackson, whose father, H. T. Jackson, owned the land adjoining the Wells tract on the south, testified that he was acquainted with the Wells and Nelson tracts of land, and that his father's land cornered with the Wells and Nelson land at a point where a hickory tree once stood and near some steps over a wire fence. He had seen the hickory tree before it was cut down. About eighteen years before he testified, he assisted in building a line fence between his father's land and the Wells land, and he located the stump of the old corner tree and placed a stone there. The first call in appellees' deed is as follows:

"Beginning at a hickory tree Jackson's and Nelson's corner thence N. $5\frac{1}{2}$ E. 163 poles crossing the state road to a white oak and gum on Nelson's line."

This is the line in dispute. E. W. Bailey, a surveyor, ran this line, and, beginning at the stone set by John Jackson near the steps over the fence, he ran 163 poles to a point in Nelson's line. At this point, he found the gum, but the white oak was missing. According to this survey, the fence erected by appellant in 1924 was several feet west of the correct division line, and included 55/100 acres of the Wells land. Matt Mitchell testified that he worked for William W. Wells in 1917 and repaired the line fence in question, and that it was located several feet east of the present wire fence, and that it started near the steps over the fence. H. T. Jackson was introduced as a witness by the appellant, and he stated that to the best of his knowledge the wire fence had been built where the old fence was located; but, on cross-examination, he admitted that the stone set by his son near the steps over the fence was the corner of his land and the Wells land and also of the Nelson land.

The circuit court fixed the boundary line between the two tracts of land as a straight line between the

stone near the steps over the fence in Jackson's line to the gum located by the surveyor in Nelson's line. It is conceded that the white oak and gum corner is correctly located, but appellant contends that the beginning corner where the hickory stood is 12 or 15 feet west of the stone near the steps.

We conclude, however, that the weight of the evidence sustains appellees' claim that the old fence was located on the line run by the surveyor, E. W. Bailey, and the circuit court correctly adjudged Nannie Gregory to be the owner of the land west of that line.

There is no merit in appellant's claim that the trial court erred in ignoring his plea of champerty. Nannie Gregory purchased the interests of her brothers and sisters in the land in 1930. The land in dispute was then in possession of appellant. The appellant erected the fence inclosing the land in 1924, after the death of William W. Wells. Nannie Gregory then owned an interest in the land which she inherited from her father. The champerty statute (Ky. Stat. sec. 209 et seq.) does not apply to a sale by one tenant in common to his cotenant of his undivided interest in land which is held adversely, since such a sale does not introduce a stranger to the title. Alexander v. Duncan, 247 Ky. 422, 57 S. W. (2d) 58; Pond Creek Coal Company v. Hatfield, 228 Ky. 806, 16 S. W. (2d) 442; Perry v. Wilson, 183 Ky. 155, 208 S. W. 776; Russell v. Doyle, 84 Ky. 386, 1 S. W. 604, 8 Ky. Law Rep. 366.

In the second above styled appeal, the circuit court sustained a demurrer to the petition, and the correctness of that ruling is the only question presented.

After setting out the judgment in the former action, the plaintiff, in his petition for a new trial, alleged that, after that judgment was rendered, he had discovered new evidence which was unknown to him at the time of the trial, and which he could not have discovered by the exercise of due diligence. The newly discovered evidence was an old patent covering the land in dispute, which he had discovered by searching the records, and which showed that the beginning corner of appellees' land was west of the point established by the circuit court in the former action. The petition states no facts from which it can be inferred that the patent, upon which appellant now relies, definitely fixes

the beginning corner at a point different from the one fixed by the circuit court, but the allegation to that effect is merely a conclusion of the pleader. Furthermore, facts are not alleged showing that proper diligence was exercised to discover the evidence before the trial. It was discovered after the trial by examining a public record, and an exercise of reasonable diligence before the trial would have led to its discovery then. Even if this evidence had been available at the trial, it would not have been decisive. As was said in Louisville & N. R. Co. v. Ueltschi's Adm'r, 126 Ky. 556, 104 S. W. 320, 31 Ky. Law Rep. 931:

> "New trials are reluctantly granted; and, when disputed matters have been fully litigated, the courts will not reopen a case for the purpose of enabling the defeated party to introduce new evidence, unless the reasons why it should be done are very strong, and it is made to appear with reasonable certainty that injustice or wrong would result unless the relief was granted, and another opportunity allowed to relitigate the questions in issue."

The evidence upon which a new trial is here sought was available to appellant at the time of the trial if proper diligence had been exercised, and is not of such character as to have a decisive influence upon the evidence to be overturned by it.

The judgment in each case is affirmed.